SPECTOR, Chief Judge
(dissents):
In May of 1968, the parties to this action entered into an agreement whereunder Meiselman was to construct a store building according to Seminole’s specifications to be used by the latter to conduct a drug store business. The lease agreement was an extensive document, as shopping center leases are wont to be, and it was signed by both parties, including the guarantee of the corporate tenant’s obligations thereunder by its president, the individual ap-pellee. Under the executed lease, Meisel-man was to complete the building by January 1, 1969. On that date construction had not yet commenced, although shortly thereafter Meiselman, the landlord, did begin construction. Completion occurred on or about June 5,- 1969.
*228 Of course, there is no question that the landlord’s failure to deliver a completed building on January 1, 1969, as he had agreed to do constituted a breach of the lease. But, the failure to make timely delivery of the premises was waived by the tenant. The record reflects that the tenant was present in and about the premises while construction was going forward, making it clear that he acquiesced in late completion of the premises. The premises were accepted by letter dated June 5, 1969, containing the following language:
“We hereby accept the store building, erected for our company, situated in the MIRACLE PLAZA SHOPPING CENTER, Tallahassee, Florida as per the original lease dated May 31, 1968 between Seminole Drug Company and H. B. Mei-selman with an annual rental of $10,500 subject to the following uncompleted items being completed at least 30 days prior to store opening:" [There follows a list of some ten items to be completed, the only one of which is material to this action was Item 1., stating: “1. Roof leak repaired.”]
Following said ten items, the letter stated:
“The Drug Store will be open for business subject to completion of the above oh or about July 1, 1969. The $875 per month rental will be payable and the commencement date of the lease will be July 1, 1969.”
During July 1969, the tenant went into possession of the building and opened its store for business. Pursuant to the tenant’s above letter, the landlord dispatched his roofing contractor to check the roof to ascertain where it was leaking so that it could be repaired. On checking, the roofer was unable to .find a leak, but he did ascertain that the air conditioning equipment was leaking. The air conditioning subcontractor was notified of the leaks by the roofer and the former investigated and found a condensation problem which he repaired. No further complaints were received by the landlord, the roofer, or the air conditioning people to the effect that the above efforts to stop the leaks were unsuccessful.
Although no such complaints were made to the landlord, the tenant testified that the roof continued to leak. In November of 1969, the tenant’s attorney wrote the landlord cancelling the lease because, inter alia, of the failure of the landlord to eliminate the roof leaks. During February 1970, the tenant vacated the premises and continued to pay the rent monthly until they vacated the premises. The evidence adduced at the trial, if believed, as apparently it was, by the trier of fact, supports the finding made that the roof continued to leak right on, notwithstanding the landlord’s admitted efforts to eliminate them. Predicated upon such finding of fact and against the above background, the trial court held that the tenant’s acceptance of the premises was conditional upon the repair of the roof leaks and since that condition had not been met, there was no such acceptance of the premises.
The tenant’s letter of June 5, 1969, makes it clear that the repairs specified by the tenant were to be made by the landlord at least thirty days prior to the store opening. In my view, the tenant, having proceeded to take possession in July, placed the landlord in a position whereunder the landlord was obliged to rely upon the tenant’s advice and knowledge as to whether the roof repair had been successfully accomplished. Incorporating the June 5, 1969, letter into and considering the same as a part of the lease agreement between the parties, the controlling principle which, in my view, correctly sets out the duties and obligations of the parties to each other is found in 49 Am.Jur.2d, Landlord and Tenant, Section 614, which states:
“. . . A provision in a lease that the tenancy thereunder is not to begin until improvements are made by the landlord is one which the tenant may waive by taking and holding possession of the premises, and if it is thus waived, he becomes liable for the rent. So it seems *229 that where a landlord undertakes to comply with his covenant to make improvements, or to put the leased premises in repair, the tenant by accepting the premises without complaint, precludes himself subsequently from asserting a breach of covenant by the landlord in these respects as a defense against liability and rent.”
The lease between the parties to this action contained a provision whereunder the tenant was to furnish the landlord with written notice of a defect requiring repair. Paragraph 19 of the lease provides in part:
“If landlord shall from time to time fail to perform any act or acts required of landlord by this lease and if such failure continues for 30 days after receipt of notice from tenant, tenant shall have the right, at tenant’s option, to perform such act or acts and the full amount of the cost and expense so incurred shall immediately be owing by landlord to tenant, and tenant shall have the right and is hereby irrevocably authorized and directed to deduct such amount from the rent.”
In my view, the tenant, being in possession of the premises and being aware that the landlord’s efforts to repair were unsuccessful, was under a duty to notify the landlord in writing so that repairs could be made. No eviction, constructive or otherwise, resulted from the landlord’s failure to successfully complete the repairs complained of in absence of a showing that the premises became untenantable. The Supreme Court addressed itself to this proposition in Masser v. London Operating Company, 106 Fla. 474, 145 So. 79, 83 (1932), by stating:
“. . . The mere failure, however, of the landlord to make repairs, the need of which does not render the premises untenantable, will not warrant an abandonment of the premises or relieve the tenant from liability for rent.
The tenant remained silent about the contractor’s unsuccessful effort to repair the roof leak for a considerable period of time. I don’t think the law permits a tenant to knowingly conceal the existence of a condition which might authorize a secession of the landlord-tenant relationship while he tests the wisdom of his site selection decision by waiting to see if the anticipated sale volume is achieved.
I would reverse the judgment appealed.